**Julie R. Vacura,** OSB No. 843692
jvacura@lvklaw.com
**Kelsey Benedick**, OSB No. 173038
kbenedick@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Ph: (503-222-4424)
Fax: (503-827-7600)

**Neil B. Klein**, CA Bar No. 142734
(*admitted pro hac vice*)
neilk@mckassonklein.com
**Maria del Rocio Ashby**, CA Bar No. 206282
(*admitted pro hac vice*)
mrashby@mckassonklein.com
McKASSON & KLEIN LLP
18401 Von Karman Ave., Suite 330
Irvine, California 92612
Ph: 949-724-0200
Fax: 949-724-0201

Attorneys for Plaintiff Bunge S.A.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **BUNGE, S.A.,**<br><br>             Plaintiff,<br><br>    vs.<br><br>**PACIFIC GULF SHIPPING (SINGAPORE) PTE. LTD., PACIFIC GULF SHIPPING CO., DOES 1 through 100,**<br><br>             Defendants. | Case No. 3:19-cv-00491-SB<br><br>**PLAINTIF'S MOTION FOR DEFAULT JUDGMENT AGAINST PACIFIC GULF SHIPPING (SINGAPORE) PTE. LTD.** |

# TABLE OF CONTENTS

MEMORANDUM OF LAW ................................................................................................ 5

I. PROCEDURAL HISTORY .................................................................................. 5

II. FACTUAL BACKGROUND ............................................................................... 5
   A. The Arbitration Award ............................................................................... 5
   B. The PGSC Entities ..................................................................................... 6
   C. Central Direction & Management ............................................................... 7
   D. Blurred Corporate Identity ......................................................................... 8
   E. Comingling & Absence of Arms-Length Relationship ............................... 8
   F. Coordinated Shielding of Assets from Creditors ...................................... 10
   G. PGS-S Avoidance of Collection Efforts ................................................... 11
   H. Alter Ego Assets in this District ............................................................... 12

III. LEGAL ARGUMENT ....................................................................................... 12
   A. This Court Has Jurisdiction Over the Claim and PGS-S ........................... 12
      1. Subject Matter Jurisdiction: FAA ...................................................... 12
      2. Personal Jurisdiction: Quasi in Rem Jurisdiction .............................. 12
   B. Legal Standard on Default Judgment ........................................................ 13
      1. Default Judgment is Appropriate Under Eitel Factors ....................... 14
         a. Eitel Factors 1 & 2: Substantive Merits & Sufficiency of the Complaint ........... 14
            i. Bunge Asserts a Valid FAA Claim ........................................... 14
            ii. Bunge's Uncontroverted Complaint Allegations Show the PGS Defendants Are Part of a Single Enterprise and thus Alter Egos ......... 16
               1. Common Control ............................................................... 18
               2. Improper Conduct ............................................................. 18
               3. Harm to Plaintiff .............................................................. 19
            iii. Alternatively, Defendants Are Also Alter Egos Under a Factors-Based Approach ............................................................................ 19
               1. Disregard of corporate formalities; overlap in owners, officers, directors & personnel ........................................... 19
               2. Intermingling of funds and property, and payment of debts ......... 20
               3. Dealings between the entities are not at arm's length ................. 20
         b. Eitel Factor 3: Possibility of Prejudice to Plaintiff ............................ 21
         c. Eitel Factor 4: Sum of Money at Stake ............................................. 21
         d. Eitel Factor 5: Possibility of a Dispute Concerning Material Facts ..... 21
         e. Eitel Factor 6: Whether Default Due to Excusable Neglect ............... 22
         f. Eitel Factor 7: Strong Policy Favoring Decision on the Merits ........... 22
      2. Default Judgment is Also Appropriate Under Rule 55 ........................ 22

IV. CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*Abu-Assal v. Abu-Assal,* 2010 WL 11508162 (C.D. Cal. Feb. 8th 2010) ..................................... 22

*Adalbe v. Adalbe,* 616 F. 2d 1089, 1092-93 (9th Cir. 1980) ........................................................ 14

*Admart AG v. Stephen & Mary Birch Foundation, Inc.,* 457 F.3d 302, 307 (3rd Cir 2006) ........ 16

*Ahmed Alghanim & Sons, W.L.L. v. Toys R Us,* 126 F.3d 15, 23 (2d Cir. 1992), *cert. denied,* 552 U.S. 1111 (1998) ........................................................................................................................ 16

*Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009) .......................................................................................................................................... 14

*Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley Cabinet & Mfg. Co.,* 877 F.2d 769, 772 (9th Cir. 1989) ............................................................................................. 16

*Cerner Middle East Ltd. v. iCapital, LLC,* No. 3:16-CV-01631-YY, 2017 WL 3671361 ........... 13

*Chan v. Soc'y Expeditions, Inc.,* 123 F.3d 1287, 1294 (9th Cir. 1997) ......................................... 17

*Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006) .......................................................... 14

*Czarina L.L.C. v. W.F. Poe Syndicate,* 358 F.3d 1286, 1292 n.3 (11th Cir. 2004) ...................... 15

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986) ....................................................... 14, 23

*Geddes United Fin. Group,* 559 F. 2d 557, 560 (9th Cir. 1977) .................................................... 14

*In re Chocolate Confectionary Antitrust Litig.,* 674 F. Supp. 2d 580, 599 n. 25 (M.D. Pa. 2009) .................................................................................................................................................... 17

*Landstar Ranger, Inc. v. Parth Enters., Inc.,* 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010)... 23

*Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.,* 314 F. Supp. 2d 1045, 1053–54 (D. Or. 2004) ........................................................................................................................................... 20

*Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.,* 185 F.3d 978, 985 (9th Cir. 1999) ........ 16

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC,* 268 F.3d 58, 63 (2d Cir. 2001) ........................................................................................................................................... 20

*N.L.R.B. v. Deena Artware, Inc.,* 361 U.S. 398, 403-404 (1960) ................................................. 17

*OS Shipping Co. v. Glob. Mar. Tr.(s) Private Ltd.,* No. 11-CV-377-BR, 2011 WL 1750449, at *6 (D. Or. May 6, 2011) .................................................................................................................. 17

*PepsiCo v. Triumfo-Mex, Inc.,* 189 F.R.D. 431, 432 (C.D. Cal. 1999) ........................................ 15

*Pepsico, Inc. v. Cal. Sec. Cansm* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) ......................... 15

*Pepsico, Inc. v. Cal. Sec. Cansm* 238 F. Supp. 2d 1172 ......................................................... 15, 22

*Raza v. Nike, Inc.,* 793 F.3d 1059, 1071 (9th Cir. 2015) .............................................................. 13

*Sky Billards,* 2016 WL 6661175 .................................................................................................... 22

*State ex rel. Neidig v. Superior Nat. Ins. Co.,* 343 Or. 434 (2007) .......................................... 18, 19

*TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987) .............................. 14, 23

*U.S. v. ACB Sales & Service, Inc.,* 590 F. Supp. 561, 574-75 (D. Az 1984) ............................... 17

*Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) ........................................ 22

**RULES**

Fed. R. Civ. P. 12(a) ........................................................................................................................ 5

Fed. R. Civ. P. 55(a) ........................................................................................................................ 5

Fed. R. Civ. P. 55(b) .............................................................................................................. 4, 5, 14

Fed. R. Civ. P. 55(b)(2) ............................................................................................................. 4, 14

**STATUTES**

9 U.S.C. §202 ................................................................................................................................. 17

9 U.S.C. §203 ................................................................................................................................. 14

9 U.S.C. §207 ........................................................................................................................... 16, 17

**MOTION**

Plaintiff BUNGE S.A. ("Bunge") hereby moves for entry of Judgment by Default against Defendant Pacific Gulf Shipping (Singapore) Pte. Ltd. ("PGS-S") pursuant to Fed. R. Civ. P. 55(b)(2).

Pursuant to Local Rule 7-1, counsel for Bunge hereby certifies that counsel has been unable to comply with the meet and confer requirement of Local Rule 7-1 because PGS-S has not appeared in this action or otherwise contacted plaintiff's counsel in connection with this action.

PGS-S was served with a summons and complaint, but failed to file an answer or otherwise defend. The clerk entered a default against PGS-S on May 31st 2019. Bunge now respectfully requests that this Court enter judgment against PGS-S pursuant to Fed. R. Civ. P. 55(b)(2) consistent with the (Proposed) Order filed concurrently herewith, as follows:

> A. Judgment in favor of Bunge and against PGS-S recognizing, pursuant to the Federal Arbitration Act and The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, the Arbitration Award obtained by Bunge against PGS-S on December 4th 2018, in the amount of (1) $2,240,809.94 ($2,116,351 plus $108,749.78 for 5% interest per annum compounded at three monthly periods from 2nd Aug 2018 through Aug 9th 2019, and tribunal costs and interest thereon of $15,707.05), plus (2) costs incurred by Bunge in this action, computed pursuant to a Bill of Costs to be filed by Bunge within 14-days after entry of the order ("Judgment"); and

> B. Finding that Pacific Gulf Shipping Co. Ltd., a Marshall Islands entity ("PGSC-MI") and PGS-S are alter egos.

The motion is based upon the below Memorandum of Law and supporting Declarations of Julie Vacura, Steve Scheidegger and Neil Klein filed concurrently herewith. This motion is further based upon the pleadings and files herein, and such matters as may be presented at a hearing or of which the Court may take judicial notice.

///

///

# MEMORANDUM OF LAW

## I. PROCEDURAL HISTORY

On April 3rd 2019, Bunge filed a complaint for recognition, confirmation and enforcement against PGS-S, and its alter ego Pacific Gulf Shipping Co. Ltd., a Marshall Islands entity ("PGSC-MI"), of an arbitration award of $2,116,353 in Bunge's favor in an arbitration between Bunge and PGS-S that took place in London, England ("London Arbitration"). Docket # ("Dkt.") 1.

On April 9th 2019, Bunge served PGS-S with the summons and complaint. *See* Dkt. 13, Affidavit of Service signed April 10th 2019.[1] Pursuant to Fed. R. Civ. P. 12(a), PGS-S was required to file a responsive pleading within 21-days after service of the summons and complaint, specifically by April 30th 2019. PGS-S failed to plead or otherwise defend and did not provide Bunge with any written notice of intent to file an appearance. As a result, Bunge filed a Motion for Entry of Default Order Against PGS-S on May 16th 2019, pursuant to Fed. R. Civ. P. 55(a).

On May 31st 2019, the Clerk entered the default of PGS-S and PGS-MI. Dkt. 23, 24. Bunge now moves for a default judgment against PGS-S, pursuant to Fed. R. Civ. P. 55(b).

## II. FACTUAL BACKGROUND

### A. The Arbitration Award

Plaintiff is a foreign company based in Geneva, Switzerland, that operates as a global distributor of various agricultural commodities. Plaintiff owns the vessel M/V Suprastar and chartered it to PGS-S, pursuant to a time charter form dated Jan 1st 2018 (the "Charter Party"). Declaration of Steve Scheidegger ("Scheidegger Decl."), Dkt. 1, Compl., Ex. 1, p. 1. The Charter Party provided for a one-time charter trip from the Black Sea (Novorossiysk, Russia) to Bangladesh for a minimum duration of 55-days, and that PGS-S would pay Plaintiff a daily rate

---

[1] On April 23rd 2019, Bunge's process server served PGS-S's alter ego PGSC-MI with the summons, complaint and civil case assignment order. See Dkt. 14 & 15, Affidavit of Service of Summons signed on April 23rd 2019.

of US $15,000 to be paid every 15-days in advance. *Id.* at Ex. 1, pp. 1-2. Disputes arising out of the Charter were to be arbitrated in London. *Id.* at Ex. 1, p. 25.

By July 13th 2018, PGS-S had failed to make required payments under the Charter Party, giving rise to arbitration before the London Maritime Arbitrators Association ("LMAA"). Dkt. 1, Compl., Ex. 2. On Dec 4th 2018, the LMAA issued the final Arbitration Award ("Arbitration Award") against PGS-S in favor of Plaintiff for US$2,116,353.11, plus interest at the rate of 5% per annum, compounded at 3-month periods from August 2nd 2018 to date of payment, and costs plus 5% annual interest thereon. *Id.* at Ex. 2, p. 3. The Arbitration Award reflected unpaid hire from May 23rd to Oct 12th 2018. *Id.* at Ex. 2, p. 19.

The Arbitration Award was certified as "final and binding on the parties and any persons claiming through or under them" by the High Court of Justice for the Business and Property Courts of England and Wales on Jan 17th 2019.*Id*, at ¶14.

## B. The PGSC Entities

PGS-S and PGSC-MI are part of a *single business enterprise* disguised as separate business entities, as more fully set out below.

Both companies are part of a group of companies known as "Pacific Gulf Shipping," and "PGSC" that also includes PGSC Shipping A/S ("PGSC-Den"), PGSC Marine (UK) Ltd. ("PGSC-UK"), Kopak Shipping Company ("Kopak"), Global Aja Corp. ("GA") and other companies who individually and as a group hold themselves out by the acronym "PGSC" (the "PGSC Entities") and operate in the maritime industry as ship broker and charter operators. *Id.*, ¶¶15-17.

The Baghpatee family (father/son) own, manage and control the PGSC Entities: father Masood Tariq Baghpatee and son Faisal Baghpati are owners, directors and managers of PGS-S ("Baghpatee" and "Baghpati" are two different ways of spelling the same family name, hereafter collectively referred to as "Baghpatee" and individually as "Tariq" and "Faisal"). *Id.*, ¶¶16, 18; Scheidegger Decl., ¶1, Ex. 1, pp. 2-3.

The Baghpatees also serve as the owners and directors of PGSC-Den, and as directors of

PGSC-UK (Faisal is also listed as a 'person with significant control' of PGSC-UK). Dkt. 1, Compl., ¶20-21; Scheidegger Decl., ¶¶3-4, Ex. 2, pp. 2-3 & Ex. 3, pp. 3-5, 12-13, 28. Tariq and Faisal serve as chief executive and director of operations and chartering, respectively, of Kopak. Dkt. 1, Compl., ¶22; Scheidegger Decl., ¶5, Ex. 4, p. 1. Although information in the Marshall Islands is non-public, based on the structure of the other PGSC Entities and lack of arm's length dealings in PGSC-MI's activities as set out herein, PGSC-MI is believed to be commonly owned or controlled by the Baghpatees. *See also* Scheidegger Decl., ¶¶2, 6.

GA is another PGSC Entity used by the Baghpatees as part of the single business enterprise. This is evident from (a) the lack of an arm's-length relationship between GA and PGS-S in relation to a bunker supply arrangement, and (b) the fact GA uses the same bank as PGSC-MI – Habib Bank AG Zurich in Dubai – which has also been used for funds due to PGS-S. Declaration of Neil Klein ("Klein Decl.") at ¶1-3, Ex. 1-2 and ¶6, Ex. 6, pp. 3-4.

**C. Central Direction & Management**

As owners, directors and officer/managers (as applicable), the Baghpatees are the common link between the PGS-S, PGSC-MI, Kopak and other PGSC Entities, and are the persons who directly and/or through Kopak exert dominion and control over the companies and their operational decisions. Scheidegger Decl. at ¶¶1-6; Dkt. 1, Compl., ¶16. For instance, Faisal refers to "Kopak Global Shipping/PGSC" as essentially the same company; GA is reported by an independent research company to be "one of a series of onshore and offshore-registered companies used by the principals of Kopak;" a notice relating to Kopak was sent on PGS-S stationary with interchangeable references to PGS-S/PGSC as being the same company; and an affidavit by a Kopak employee filed in United States litigation admits to instructing a 3rd party debtor to transfer amounts due to PGS-S into PGSC-MI's bank account. Klein Decl. at ¶¶ 1-7, Ex. 1-3 & 6.

The Baghpatee's centralized control over PGS-S was further evident in Bunge's dealings with PGS-S that led to the Arbitration Award. Although PGS-S maintains a registered address in Singapore, its day-to-day operations and chartering decisions were directed and managed by the

Baghpatees. They attended business meetings with Bunge in London in December 2018 (Faisal at one meeting and both Baghpatees at another meeting), and sent correspondence relating to the Charter Party, using email addresses fmb@kopakshpping.com and mtb1@kopakshipping.com respectively. No communications relating to the Charter Party with PGS-S originated with PGS-S itself; communications (including from Faisal) routinely referred to PGS-S as "PGSC" instead of its own name. Dkt. 1, Compl., ¶24; Scheidegger Decl., ¶6, Ex. 5.

PGSC-MI has a registered address in the Marshall Islands, but its day-to-day operations and chartering decisions are directed and managed by the Baghpatees via Kopak. Dkt. 1, Compl. ¶25. And PGSC-UK communicates "c/o Kopak Shipping, C49, KDA Scheme 1, Karsaz Road, Karachi Pakistan." Dkt. 1, Compl. ¶26.

## D.  Blurred Corporate Identity

The PGSC Entities blur their separate corporate identities by indiscriminate use of "Pacific Gulf Shipping" and the acronym "PGS" to refer to the business and identity of separate entities. Dkt. 1, Compl., ¶28. And in its dealings with Bunge, PGS-S used the acronym "PGSC" even though the word "company' is not part of its name. Scheidegger Decl., ¶6, Ex. 5.

PGSC-MI and PGS-S (and other PGS Entities) use a joint website at www.pacificgulfshipping.com, where they present themselves as a single entity and identify a corporate office at Trust Complex Ajeltake Road,  Ajeltake Island, Majuto MH96960, Marshall Islands. Only telephone contact names and numbers are listed for "Singapore," "Dubai" and "Denmark," without identifying any as separate entities. Dkt. 1, Compl. ¶29; Klein Decl., ¶7, Ex.7.

## E.  Comingling & Absence of Arms-Length Relationship

PGSC-MI and PGS-S have commingled assets, used the same bank account and covered debts for the other entity, despite having no ostensible obligation to do so. Dkt. 1, Compl., ¶30.

Officially, PGS-S maintains its bank account with Standard Chartered Bank in Singapore, and PGS-MI maintains its bank account with Habib Bank AG Zurich in Dubai. Dkt. 1, Compl., ¶31. Despite purporting to maintain separate banking, PGS-S admitted under penalty of perjury

in a U.S. District Court action in the Southern District of Texas (*Naiad Maritime Co. v. Pacific Gulf Shipping Company*, No. 4:16-cv-01324 ("*Naiad* action")) that it instructed a 3rd party debtor to pay amounts due to PGS-S into PGSC-MI's bank account at Habib Bank AG Zurich, and it admitted PGS-S and PGSC-MI did not owe any "monies/debt" to the other. Dkt. 1, Compl., ¶32; Klein Decl., ¶6, Ex. 6.

In a U.S. District Court action in the District of Massachusetts (*Belus Shipping Ltd. v. Pacific Gulf Shipping (Singapore) Pte. Ltd.*, No. 1:18-cv-11419) ("*Belus* action"), involving a Rule B attachment of bunkers aboard the MV Navios Meridian, PGS-S moved to vacate the attachment, and entered into a cash security agreement with plaintiff in mid-July 2018 whereby it agreed to wire $300,000 to stand in place of the bunkers; however, at that time, PGSC-MI (not PGS-S), was the charterer of the MV Navios Meridian pursuant to a charter party dated June 28th 2018 – i.e., despite not being the vessel's charterer, PGS-S challenged the attachment and agreed to pay $300,000 for bunkers *on a PGSC-MI chartered vessel*. Dkt. 1, Compl., ¶33; Klein Decl., ¶4, Ex. 3. Further, in the *Belus* action, PSG-S delayed disclosure of PGSC-MI's role as charterer of the vessel *until after* multiple pleadings had been filed and at least one hearing concluded. Klein Decl., ¶4, Ex. 3.

The June 28th 2018 date of the PGSC-MI charter party is significant: by then, PGS-S was in arrears on its own charter obligations to Bunge on the MV Suprastar and to Belus on the MV Greenwich (the MV Greenwich had just been arrested in Bangladesh on June 26th 2018, i.e. 2-days prior). With PGSC-MI as the apparent new charterer of the MV Navios Meridian, PGS-S could argue (as it ultimately did in *Belus*) that it was not subject to US maritime arrest or attachment in connection with that vessel. Klein Decl., ¶4, Ex. 3 and ¶10, Ex. 8.

PGS-S has also failed to maintain an arms' length relationship with other PGS entities. In the same *Belus* action, PGS-S claimed through the sworn statement of Faisal that it was not the owner of the bunkers based on a bunker supply agreement with GA (another PGS entity), whereby GA agreed to supply bunkers and other supplies to PGS-S chartered vessels. However, the terms of the such agreement showed a clear absence of any arm's length relationship between

PGS-S and GA: for example, title and risk associated with the bunkers remained with GA until "receipt of outstanding payments and debts owed to [GA]", but payment was not due until 90-days after supply – which meant GA would not 'own' the bunkers until well *after* they had been consumed (or never, if PGS-S continuously carried some debt with GA). The bunker supply agreement also failed to provide for interest or fees, indicating GA was purchasing bunkers and carrying debt for PGS-S for 90-days at risk of loss but *for no profit*. Dkt. 1, Compl., ¶34; Klein Decl., ¶¶2-3, Ex. 1-2.

**F. Coordinated Shielding of Assets from Creditors**

The PGS entities shift their primary chartering operations from one entity to another (for about the last 5-years, primarily between PGSC-MI and PGS-S) to shield them from significant liabilities incurred in their operations. The PGS entities have a history of defaulting on charter obligations and a pattern of shifting the operations of defaulting PGS entities to non-defaulting PGS entities, so that the assets of the defaulting entity are outside the reach of creditors. For example:

In the *Naiad* action above, as well as another action involving Naiad in U.S. District Court for the District of Maryland (*Naiad Maritime Co. v. Pacific Gulf Shipping Company*, No. 1:16-cv-04006), PGSC-MI was alleged to have represented that it had "ceased trading" and no longer had available assets to meet liabilities. Dkt. 1, Compl. ¶36; Klein Decl., ¶5, Ex. 4-5. However, PGSC-MI continues to operate to this day and is currently prosecuting a $19 million claim within this District.

After the *Naiad* litigation (in Texas and Maryland District Courts), PGS-S entered into charter contracts with Bunge and Belus in 2018 but also defaulted on charter payments, leading to Bunge's Arbitration Award and the *Belus* litigation in Massachusetts. Dkt. 1, Compl., ¶37. And like PGSC-MI had done in the *Naiad* litigation, PGS-S claimed "financial hardship" for its inability to meet its 2018 charter payment obligations to Bunge. Dkt. 1, Compl., Ex. 2 at pp. 17, ¶35. Nevertheless, during the same 2018 period, PGS-S was dissipating assets it had on hand for the benefit of other Baghpatee entities, as demonstrated in Section E above, PGS-S posted

$300,000 to stand as substitute security for bunkers aboard the MV Navios Meridian! Therefore, through the control of the Baghpatees, assets of PGS-S were dissipated to benefit alter ego PGSC-MI. Dkt. 1, Compl., ¶¶39-40.

## G. PGS-S Avoidance of Collection Efforts

To date, PGS-S has failed and refused to pay the Arbitration Award. Also, despite diligence, Bunge's collection efforts have been unsuccessful, including demands for payment, a Singapore judgment on the Arbitration Award, and multiple Singapore orders (injunction prohibiting disposal of assets in Singapore and attachment order directing that payment on PGS-S' sub-chartering operations be paid into PGS-S' US dollar account with Standard Chartered Bank).

As of October 2018, Bunge was informed by Singapore counsel then representing PGS-S that the account balances on PGS-S' Singapore dollar and US dollar accounts was only SGD2,511.43 and USD5,202.89 respectively. Then, in early 2019, Bunge was informed that PGS-S continues to engage in chartering operations, which means that charter payments should be deposited into its bank accounts. However, no such activity has been reflected in PGS-S' bank accounts, which is evidence the Baghpatees have diverted PGS-S receivables, possibly to accounts of other PGSC Entities that they own and operate. Further, PGS-S has refused to provide an accounting for deposits into its US dollar bank account. Dkt. 1, Compl., ¶41; Scheidegger Decl., ¶¶7-8, Ex. 6-8.

Recently, a deposit of $14,980 was made into PGS-S' US dollar account in Singapore, which Kopak/PGS-S claims was an erroneously remitted charter hire by the payee to PGS-S on a vessel fixture that expired in February 2017; however, Kopak/PGS-S have refused to provide proof of such allegedly expired fixture. This has reinforced Bunge's belief PGS-S is still engaged in chartering activity and that the Baghpatees are diverting sub-charter payments to other PGSC Entities, or have novated PGS-S vessel fixture(s) to another PGSC Entity for the same purpose, all to avoid Bunge and other creditors. Scheidegger Decl., ¶9, Ex. 9.

Therefore, the uncontroverted facts establish PGS-S and PGSC-MI are alter egos of one another and, along with other entities, part of a single business enterprise (the "PGSC entities") disguised as separate business entities to avoid liabilities incurred by the various PGSC entities.

### H. Alter Ego Assets in this District

PGSC-MI, alter ego of PGS-S, filed a maritime action in this District seeking a money award of no less than $22,609,880.98, currently being litigated. *Gulf Shipping Co. v. Adamastos Shipping & Trading S.A., et al.*, Case No. 3:18-CV-02076-MO ("Vigorous Shipping action"), Dkt. 1. In that action, PGSC-MI obtained a Rule B maritime attachment on the MV Vigorous as security for claims against the defendants. With specially-appearing vessel owner, PGS-MI agreed to substitute security of $9.5 million in place of the vessel, which the Court approved on March 20th 2019. Vigorous Shipping action, Dkt. 121. Such funds are on deposit with the Court as security for PGSC-MI's claims. Those funds are an asset of PGS-S, because PGSC-MI is alter ego of PGS-S.

## III.   LEGAL ARGUMENT

### A. This Court Has Jurisdiction Over the Claim and PGS-S

#### 1.  Subject Matter Jurisdiction: FAA

Chapter 2 of the Federal Arbitration Act ("FAA") provides for original subject matter jurisdiction in the federal courts over actions to enforce foreign arbitration awards under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10th 1958 ("New York Convention"), 9 U.S.C. §203 (action or proceedings under the Convention deemed to arise under laws and treatises of US; district courts shall have original jurisdiction). Bunge's Complaint seeks enforcement of the London Arbitration Award under the New York Convention and the FAA. This Court therefore has subject matter jurisdiction to enforce the Arbitration Award.

#### 2.  Personal Jurisdiction: Quasi in Rem Jurisdiction

"A district court has personal jurisdiction over a foreign defendant in a foreign arbitral award case, and does not offend the aforementioned 'notions of fair play and substantial justice,' where the defendant has property situated within the relevant forum. *Cerner Middle East Ltd. v. iCapital, LLC*, No. 3:16-CV-01631-YY, 2017 WL 3671361, at *3 (D. Or. Mar. 27th 2017), *report and recommendation adopted in part, rejected in part*, No. 3:16-CV-01631-YY, 2017 WL

2579292 (D. Or. June 14th 2017). The property "need not be related to the underlying dispute[.]" *Id.* Specifically, this Court may exercise *quasi in rem* jurisdiction over PGS-S because the two elements for *quasi in rem* jurisdiction are satisfied here: (1) an arbitral tribunal rendered a valid award against PGS-S, and (2) PGS-S, through its alter ego PGSC-MI, has property in this forum. *Cerner Middle East Ltd. v. iCapital, LLC,* No. 3:16-CV-01631-YY, 2017 WL 2579292 at *1 (alter ego question is for the forum court to decide).[2]

Element 1 is satisfied because the London arbitral tribunal rendered an arbitration award against PGS-S (who participated in the arbitration), and the award is now final. Element 2 is satisfied, based on the uncontroverted facts set out above and discussed in Section C.1.b., *infra*, which establish PGS-S and PGSC-MI are alter egos of one another and, with other entities, part of a single business enterprise (the "PGSC entities") disguised as separate business entities to avoid liabilities incurred by the various PGSC entities. As alter egos of one another, PGSC-MI's property interest in the Vigorous Shipping Action, including substitute security of $9.5 million posted therein, constitutes property of PGS-S in this District.[3]

This Court may therefore exercise *quasi in rem* jurisdiction to enter default judgment against PGS-S recognizing, confirming and enforcing the Arbitration Award (including against PGS-S' alter ego property in Oregon).

## B. Legal Standard on Default Judgment

On a motion for default judgment under Fed. R. Civ. P. 55(b)(2), the Court accepts as true well-pleaded allegations in the complaint relating to liability. *TeleVideo Sys., Inc. v. Heidenthal,*

---

[2] A company's contacts with a forum state may be attributed to an affiliated company to exercise personal general personal jurisdiction over the latter upon a showing that the two companies are alter egos. See e.g. *Raza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015).

[3] Even though the Arbitration Award was entered against PGS-S and not PGSC-MI, that is not dispositive since non-signatory alter egos can be bound by an arbitration agreement under ordinary contract and agency principles, including veil piercing, alter ego and estoppel. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1053–54 (D. Or. 2004) (citing *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir.1986)); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009).

826 F.2d 915, 917-18 (9th Cir. 1987). Defendant's liability is established and all fact allegations in the complaint, except damages, are assumed true. *Geddes United Fin. Group,* 559 F. 2d 557, 560 (9th Cir. 1977).

The question of whether to enter a default judgment is within the sound discretion of the district court. *Adalbe v. Adalbe,* 616 F. 2d 1089, 1092-93 (9th Cir. 1980). In deciding whether to grant default judgment, the Ninth Circuit considers the following *Eitel* factors: (1) merits of plaintiff's substantive claim; (2) sufficiency of the complaint; (3) possibility of prejudice to plaintiff; (4) sum of money at stake in the action; (5) possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect, and (7) a strong policy favoring decision on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying this discretionary standard, default judgments are more often granted than denied. *PepsiCo v. Triumfo-Mex, Inc.,* 189 F.R.D. 431, 432 (C.D. Cal. 1999). As the following discussion demonstrates, the balance of the *Eitel* factors weighs strongly in favor of granting default judgment against PGS-S.

**1. Default Judgment is Appropriate Under *Eitel* Factors**

**a. *Eitel* Factors 1 & 2: Substantive Merits & Sufficiency of the Complaint**

Taken together, these *Eitel* factors require that plaintiff "state a claim on which the plaintiff can recover." *Pepsico, Inc. v. Cal. Sec. Cansm* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

**i. Bunge Asserts a Valid FAA Claim**

Bunge has asserted a claim for recognition, confirmation and enforcement under the Federal Arbitration Act ("FAA") against PGS-S of a final arbitration award of $2,116,353, plus attorney fees, costs and interest rendered in its favor in arbitration with PGS-S.

Taking all the well-pled allegations in the complaint as true, the validity of Bunge's claim and PGS-S's liability are conclusively established and unassailable: The FAA, which implements The New York Convention, mandates that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. §207. Foreign arbitration awards are "presumed to be confirmable"

and the burden of proof rests on the party defending against enforcement. *Czarina L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004).

Because the principal purpose advanced by the Convention is to favor enforcement of foreign arbitration awards, parties have limited defenses to withstand recognition and enforcement; namely, incapacity, lack of notice of arbitration proceedings, award exceeding scope of issues submitted to arbitration, arbitration panel or procedure not in accordance with the parties' agreement, arbitration award not yet binding, or if recognition or enforcement would be contrary to US public policy. *See* New York Convention, Art. 5. The district court's role is therefore limited and it must confirm the award unless one of the specified grounds for refusal applies. *Admart AG v. Stephen & Mary Birch Foundation, Inc.*, 457 F.3d 302, 307 (3rd Cir 2006). The showing required to avoid confirmation of a foreign arbitration award is high. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys R Us,* 126 F.3d 15, 23 (2d Cir. 1992), *cert. denied,* 552 U.S. 1111 (1998).

Here, the Arbitration Award arose from a commercial contract dispute (maritime charter agreement), demand for arbitration was made as required by the contract, PGS-S participated in the arbitration, selected one of 2-arbitrators, briefed the issues relating to the award, and elected to not appeal the award in English courts. Dkt. 1, Compl., Ex 1 & Ex. 2 at pp. 2-3. And as the US acceded to the New York Convention to encourage recognition and enforcement of foreign arbitration awards, there is no public policy argument PGS-S can raise against recognition and enforcement.[4] Accordingly, Bunge has asserted a "meritorious" and "sufficiently" (i.e. properly) pled claim for recognition, confirmation and enforcement of its Arbitration Award, and the first two *Eitel* factors weigh in favor of entry of default judgment against PGS-S.

///

---

[4] The Arbitration Award satisfies the remaining statutory requirements under the FAA: (a) it arises out of a legal relationship that is commercial and is not entirely between citizens of the United States (9 U.S.C. §202) (Dkt. 1, Compl. Ex. 1); and (b) Plaintiff's April 3rd 2019 complaint for recognition and enforcement was filed within 3-years after issuance of the Arbitration Award on Dec 4th 2018 (9 U.S.C. §207) (Dkt. 1, Compl. Ex. 2).

### ii. Bunge's Uncontroverted Complaint Allegations Show the PGS Defendants Are Part of a Single Enterprise and thus Alter Egos[5]

"In considering whether to disregard the corporate form, [federal courts] apply federal substantive law, although [they] may look to state law for guidance." *Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir. 1989). Under federal common law, the corporate veil is properly pierced "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (citing *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2nd Cir.1980)); *see also OS Shipping Co. v. Glob. Mar. Tr.(s) Private Ltd.*, No. 11-CV-377-BR, 2011 WL 1750449, at *6 (D. Or. May 6, 2011). The test in *Chan* reflects the traditional application of alter ego, which arises most commonly in the context of a controlling parent and subservient subsidiary.

But the Supreme Court has found alter ego equally applicable to pierce the corporate veil of *affiliated entities* to impute liability from one entity to the other. Therefore, under federal common law, the corporate veil separating corporate entities is also disregarded if defendant entities are part of a single enterprise:

> …we think [plaintiff] is entitled to show that these separate corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.'…[NP] …The several companies may be represented as one. Apart from that is the question whether in fact the economic enterprise is one, the corporate forms being largely paper arrangements that do not reflect the business realities. One company may in fact be operated as a division of another; one may be only a shell, inadequately financed; the affairs of the group may be so intermingled that no distinct corporate lines are maintained. These are some, though by no means

---

[5] Bunge's alter ego theory is not a separate substantive claim, but a means of imposing liability for Bunge's cause of action pursuant to the FAA. *See Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself.").

all, of the relevant considerations….

*N.L.R.B. v. Deena Artware, Inc.*, 361 U.S. 398, 403-404 (1960) (citations omitted); *see also In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 599 n. 25 (M.D. Pa. 2009) (organizations that assume alter ego status effectively operate as single unified entity despite superficial corporate boundaries; consolidated entity is subject to jurisdiction in any forum where it operates regardless of which formal corporation maintains in-forum presence); *U.S. v. ACB Sales & Service, Inc.*, 590 F. Supp. 561, 574-75 (D. Az 1984) (affiliated corporations liable for violations of FTC order entered against defendant corporation because all were part of single enterprise).

The Oregon Supreme Court follows federal common law in recognizing the single enterprise theory as the basis for piercing the corporate veil of affiliated corporations:

> It is well established that where corporate affairs are confused with those of the stockholders, a subsidiary *or an affiliate corporation* the corporate veil may be lifted to protect persons whose rights have been jeopardized by the corporate device.

*State ex rel. Neidig v. Superior Nat. Ins. Co.*, 343 Or. 434 (2007) (citing *Abbot v. Bob's U-Drive et al.,* 222 Or. 147, 161-62 (1960) (emphasis in original)).

To pierce the corporate veil of affiliated corporations, a plaintiff must show: (1) common control, (2) improper/wrongful conduct, and (3) causation. *Id.* at 454.[6] In this case, the uncontroverted allegations in the Complaint, which the Court construes as true in determining whether to enter default judgment, establish that PGS-S and PGSC-MI (along with other PGS Entities) are for all practical purposes (1) operated as a single entity, based on centralized control by the Baghpati family and Kopak; (2) controlled so as to operate a vessel chartering and cargo

---

[6] Notions of control, wrongful conduct and causation are present in federal "single enterprise" cases. See e.g. *U.S. v. ACB Sales & Service, Inc.*, *supra,* 590 F. Supp. at 574-75 (single enterprise based on facts relating to how companies appeared to the public and interdependent relationship between them); *see also Chan v. Soc'y Expeditions, Inc.*, *supra,* 123 F.3d at 1294 ("corporate separateness is respected unless doing so would work injustice upon an innocent third party.")

business through multiple corporate vehicles, until it is necessary to transfer business, funds and payments from one vehicle to another to evade financial obligations; and (3) by those acts, evading payment of contractual debts and of the Arbitration Award, thereby injuring Plaintiff.

## 1. Common Control

The corporate veil may be pierced to prevent affiliated corporations under actual common control from being used to harm a third party. *State ex rel. Neidig*, *supra*, at 343 Or. at 454.

The uncontroverted facts show PGS-S and PGSC-MI were at all relevant times under the actual control of the Baghpatees: as set out above, pursuant to common control by the Baghpatee family, PGS-S and PGSC-MI were using their affiliated status to benefit each other at the cost of causing injury to third party creditor Bunge.

Under the common control of the Baghpatees, PGS-S entered into an illusory bunker agreement with another PGSC Entity (GA), under terms which reflect no benefit or enforcement structure for GA. And in the *Naiad* litigation in Texas, PGS-S admitted under penalty of perjury that it instructed a third party to transfer money due to PGS-S into PGSC-MI's bank account at Habib Bank AG Zurich, despite PGS-S and PGSC-MI not owing money to each other.

## 2. Improper Conduct

"Improper conduct" that disregards corporate separateness by the controlled corporations "refers less to abstract notions of morality and more to dishonest or deceitful conduct intended to harm a third party, whether or not that conduct violates a statute of other legal obligation." *State ex rel. Neidig, supra*, 343 Or. at 459. Examples of improper conduct include: inadequate capitalization; misrepresentation short of fraud; "confusion or comingling of assets; use of corporate affiliates to evade regulation; "oppressive or manipulative conduct" that uses corporate form to harm a creditor; and manipulating or abusing the corporate form in manner that draws funds away from debtor corporation or confers a benefit on the party sought to be charged. *Id.*, at 458-60. As set out above, the Baghpatees used their common control of PGS-S and PGSC-MI to draw funds away from one debtor affiliate for the benefit of another, at the expense of creditors.

///

### 3. Harm to Plaintiff

Under the third element for piercing the corporate veil, plaintiff must show it was harmed by the improper conduct. *State ex rel. Neidig, supra*, 343 Or. at 454-55.

Due to the improper use of common control of PGS-S and PGSC-MI by the Baghpatees, Bunge has suffered harm. To date, PGS-S has refused to pay Bunge the Arbitration Award or provide an accounting of its Singapore bank account. And the inactivity of its bank accounts, despite evidence of continued chartering operations, indicates the Baghpatees are shifting deposits (and/or operations) to other entities to hide assets from Bunge.

### iii. Alternatively, Defendants Are Also Alter Egos Under a Factors-Based Approach

Federal courts also examine a non-exhaustive list of factors to evaluate whether alter ego liability exists. *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1053–54 (D. Or. 2004). The factors include (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's-length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

In the alternative to the "single enterprise" test for alter ego liability, the uncontroverted Complaint allegations and evidence show the PGS Defendants and related entities owned and controlled by the Baghpatees operate as alter egos *even under* the factors-based approach:

### 1. Disregard of corporate formalities; overlap in owners, officers, directors & personnel

In addition to having an overlap in ownership and directors, reflected in the Baghpatees' control directly and via Kopak *see supra*, Section II.B, the PGSC Defendants regularly disregard corporate formalities. For example, virtually all communications relating to Bunge's Charter

Party with PGS-S originated from or were sent by Kopak as opposed to PGS-S, and regularly referenced "PGSC." Numerous examples of the PGS Entities' disregard of corporate separateness are addressed above, including: a notice to customers regarding a hacking risk that refers interchangeably to PGS-S, PGSC-MI and "Kopak," and identifies the Kopak email addresses and fax numbers as those that are used in relation to business with "Pacific Gulf Shipping Company;" online networking profiles of PGS Entity employees; PGSC Entities' use of a joint website; and Faisal's reference to "pgsc" on communications that relate to PGS-S. Also, as reflected in documents across multiple litigations involving the PGS Entities, their business is run primarily out of Kopak's facilities. *See supra*, Section II.B-D.

### 2. Intermingling of funds and property, and payment of debts

Also discussed above, the PGS Entities comingle assets, cover debts for one another and engage in business among themselves without indicia of arm's length relationship, for example: PGS-S moving to vacate attachment of bunkers and posting security of $300K on a PGSC-MI charter party in the *Belus* action, and the delay in disclosing to the court and parties the nature of PGS-S and PGSC-MI's respective interest in that contract; PGS-S (through Kopak) using PGSC-MI's bank account as its own to divert third-party payments to PGSC-MI's bank account in the *Naiad* action; and PGS-S securing bunkers for its chartered vessels under a one-sided agreement with GA. *See supra* Section II.E-F.

### 3. Dealings between the entities are not at arm's length

The uncontroverted facts also demonstrate the Baghpatees have not maintained an arm's-length relationship between the various PGSC Entities. For example, under the PGS-S/GA bunker supply agreement revealed in the *Belus* action, title and risk associated with the bunkers remained with GA until "receipt of outstanding payments and debts owed to" GA, but since payment was not due until 90-days after supply GA would not "own" the bunkers until well after they were consumed (or never, if PGS-S continuously carried some debt with GA). The agreement also failed to provide for interest or fees, indicating GA purchased the bunkers and carried debt for PGS-S for 90 days for no profit. *See supra* Section II.E.

Clearly, PGSC Entities disregard corporate formalities and intermingle their funds, have overlap in ownership, officer and directors, have common addresses, websites, and ostensive offices (Kopak facility), have engaged in dealings that are not at arm's length, and have paid or guaranteed one another's debts. Viewed in its totality, this conduct constitutes abuse of the corporate form and demonstrates that the various PGS entities, and PGS-S and PGS-MI in particular, are alter egos of each other.

### b. *Eitel* Factor 3: Possibility of Prejudice to Plaintiff

Bunge complied with its agreement to resolve charter party differences with PGS-S via arbitration, but its collection proceedings in Singapore (PGS-S's place of incorporation and principal office) have gone nowhere. Bunge will suffer prejudice if a default judgement does not issue because it will be deprived of an opportunity to be made whole on its arbitration award. *Sky Billards,* 2016 WL 6661175, at *5; *Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (plaintiff would suffer prejudice absent entry of default judgment because of defendant's unwillingness to cooperate and defend the claim); *Abu-Assal v. Abu-Assal,* 2010 WL 11508162, at *2 (C.D. Cal. Feb. 8th 2010) (default judgment granted in fraud and civil RICO case where defendant fled the country to evade obligations imposed by state family law court).

### c. *Eitel* Factor 4: Sum of Money at Stake

For this factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Pepsico, Inc. v. Cal. Sec. Cansm* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Here, the amount at stake does not justify denying a default judgment because the sum was the product of a final adjudicated arbitration between the parties and no appeal was taken by PGS-S. And, confirmation of foreign arbitration awards is authorized by the FAA. This factor also weighs in favor of entry of default judgment.

### d. *Eitel* Factor 5: Possibility of a Dispute Concerning Material Facts

On entry of default, well-pleaded factual allegations are deemed true, except for damages. *TeleVideo,* 826 F.2d at 917. PGS-S was served but chose not to appear to defend the action, so there is no possibility of a dispute on material facts. This too, favors entry of default judgment.

### e. *Eitel* Factor 6: Whether Default Due to Excusable Neglect

Excusable neglect is unlikely because both defendants were property served with the lawsuit, thus providing them with actual notice of the action. *Landstar Ranger, Inc. v. Parth Enters., Inc.,* 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010) (default not due to excusable neglect where defendants' property served and aware of lawsuit). Further both defendants work closely together and have common ownership and it is highly likely that one would inform the other of the lawsuit.

### f. *Eitel* Factor 7: Strong Policy Favoring Decision on the Merits

In *Eitel*, the Ninth Circuit noted cases should be decided on the merits "whenever possible." *Eitel,* 782 F.2d at 1472. However, the availability of default judgments under Rule 55 indicates "this preference, standing alone, is not dispositive," and that courts may decide a case before the merits are heard when "a decision on the merits [is] impractical, if not impossible." *PepsiCo,* 238 F. Supp. 2d at 1177. PGS-S was properly served with and had notice of the complaint and summons, Bunge's Singapore collection efforts, and the Arbitration Award. PGS-S' own election not to appear, despite notice, has made a decision on the merits impossible.

When viewed in totality, the *Eitel* factors weigh heavily in favor of entry of default judgment.

### 2. Default Judgment is Also Appropriate Under Rule 55

Bunge has satisfied the procedural requirements of Rule 55 for entry of judgment: PGS-S was served with the complaint and summons, the Clerk entered default against PGS-S, and PGS-S is not a minor or an incompetent person. Vacura Decl., ¶¶1-3. And, although not required by Rule 55(b)(2), Bunge served this motion for default judgment on the defendants in the action. *Id.* at ¶4.

///

///

///

///

## IV.    CONCLUSION

Based on the foregoing, Bunge respectfully requests the Court grant this motion and order as follows:

1.    Find that PGS-S and Pacific Gulf Shipping Co. Ltd., a Marshall Islands entity, are alter egos;

2.    Issue Judgment in favor of Bunge and against PGS-S pursuant to the FAA and New York Convention, recognizing the Arbitration Award obtained by Bunge against PGS-S on December 4th 2018, in the amount of:

    a.    $2,240,809.94 ($2,116,351 plus $108,749.78 for 5% interest per annum compounded at three monthly periods from 2nd Aug 2018 through Aug 9th 2019, and tribunal costs and interest thereon of $15,707.05), plus

    b.    costs incurred by Bunge in this action, computed pursuant to a Bills of Costs to be filed by Bunge within 14-days after entry of the order[7].

**DATED:** August 27, 2019.

MCKASSON & KLEIN LLP

_____*s/Neil Klein*_____
Neil Klein, *pro hac vice*
neilk@mckassonklein.com
Maria del Rocio Ashby, *pro hac vice*
mrashby@mckassonklein.com

LARKINS VACURA KAYSER LLP

_____*s/Julie R. Vacura*_____
Julie R. Vacura, OSB No. 843692
jvacura@lvklaw.com
Kelsey Benedick, OSB No. 173038
kbenedick@lvklaw.com

Attorneys for Plaintiff Bunge S.A.

---

[7] If the Court enters Judgment in favor of Bunge and against PGS-S as requested herein, Bunge intends to file a post-judgment enforcement motion/application against property or assets of PGS-S and/or alter ego PGSC-MI in Oregon.